UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| MARIA BARRAGAN and ANGEL | § | CV No. 4:14-CV-93-DAE |
| ALVAREZ, as Next Friend to A.A. JR., | § | |
| A.A., and A.A., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| GENERAL MOTORS LLC, U-HAUL | § | |
| INTERNATIONAL, INC., and | § | |
| AMERCO, | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

ORDER GRANTING IN PART AND DENYING IN PART GENERAL
MOTORS' MOTION TO DISMISS; GRANTING IN PART AND DENYING IN
PART U-HAUL INTERNATIONAL'S MOTION TO DISMISS, AND DENYING
AS MOOT AMERCO'S MOTION TO DISMISS

Before the Court is a Motion to Dismiss for Failure to State a Claim

filed by Defendant General Motors LLC ("GM") (Dkt. # 15); a Motion to Dismiss

for Failure to State a Claim by Defendant U-Haul International, Inc. ("U-Haul")

(Dkt. # 18); and a Motion to Dismiss for Lack of Personal Jurisdiction and for

Failure to State a Claim by Defendant AMERCO (Dkt. # 17). The Court held a

hearing on the motions on September 29, 2015. At the hearing, Robert P.

Woodliff, Esq., represented Plaintiffs Maria Barragan and Angel Alvarez, as next

friend to the minor children of the decedent (collectively, "Plaintiffs"); David M.

Pritchard and David R. Montpas, Esqs., represented GM; and David A. Rich and J. Banks Sewell, Esqs., represented U-Haul and AMERCO.  After careful consideration of the supporting and opposing memoranda and the arguments presented at the hearing, the Court, for the reasons that follow, **GRANTS IN PART AND DENIES IN PART** GM's Motion to Dismiss for Failure to State a Claim, **GRANTS IN PART AND DENIES IN PART** U-Haul's Motion to Dismiss for Failure to State a Claim, and **DENIES AS MOOT** AMERCO's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim.

<u>BACKGROUND</u>

On August 27, 2012, Isabel Barragan Mendoza ("Mendoza") was driving on I-10 with Juan Barragan, her brother, in the passenger's seat.  (Dkt. # 11 ¶ 23.)  Mendoza was driving a 2004 GMC Envoy, which was towing a U-Haul trailer.  (<u>Id.</u> ¶ 24.)  Mendoza lost control of the vehicle, which rolled over, resulting in the deaths of both Mendoza and her brother.  (<u>Id.</u> ¶ 25.)

Plaintiff Maria Barragan ("Barragan") is the mother of the decedents. (<u>Id.</u>)  Plaintiff Angel Alvarez ("Alvarez") is the father of Mendoza's three children. (<u>Id.</u>)  On August 27, 2014, Plaintiffs filed suit in the 205th District Court of Culbertson County, Texas against GM, U-Haul, and AMERCO (collectively, "Defendants").  (Dkt. # 1-5, Ex. A-2.)  Defendants jointly removed the action to

this Court on December 22, 2014, invoking the Court's diversity jurisdiction.

(Dkt. # 1.)  On January 13, 2015, Plaintiffs filed a Second Amended Complaint.

(Dkt. # 11.)  Plaintiffs assert claims against GM for design defect, manufacturing

defect, failure to warn, misrepresentation, negligence, and breach of warranty;

claims against U-Haul for design defect, manufacturing defect, negligence, and

breach of warranty; and claims against AMERCO as the parent company of

U-Haul on the theory of respondeat superior.[1]  (Id. ¶¶ 26–65, 74–85.)

On January 23, 2015, Ruby Campas, as next friend to the children of

decedent Juan Barragan, filed a Motion to Intervene pursuant to Rule 24 of the

Federal Rules of Civil Procedure.  (Dkt. # 14.)  On February 5, 2015, Plaintiffs and

Campas jointly filed a Motion for Joinder and Motion to Remand seeking to join

Campas under Rule 20 of the Federal Rules of Civil Procedure and remand to state

court.  (Dkt. # 23.)  On July 7, 2015, this Court issued an Order denying the

requests for intervention, joinder, and remand.  (Dkt. # 60.)

Prior to filing of the Motion for Joinder Motion to Remand,

Defendants had filed the instant Motions to Dismiss on January 26, 2015.  (Dkt.

## 15, 17, 18.)  Pursuant to an Order granting Plaintiffs additional time to respond,

Plaintiffs filed their responses in March 2015.  (Dkt. ## 42, 43, 44.)  Defendants

---

[1] Plaintiffs also assert claims against the unidentified General Motors dealership
that sold the vehicle involved in the crash and the unidentified U-Haul rental center
that rented the trailer that the vehicle was towing.  (Dkt. # 11 ¶¶ 66–73, 86–93.)

have each filed replies.  (Dkt. ## 49, 52, 53.)  Having resolved the jurisdictional issues raised by Plaintiffs' previous requests for joinder and remand, the motions are ripe for review.

LEGAL STANDARDS

I.    Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

II.    Motion to Dismiss for Lack of Personal Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint where the court lacks personal jurisdiction over the

4

defendant.  Fed. R. Civ. P. 12(b)(2).  The plaintiff bears the burden of making a

prima facie showing that personal jurisdiction is proper.  <u>Monkton Ins. Servs., Ltd.</u>

<u>v. Ritter</u>, 768 F.3d 429, 431 (5th Cir. 2014).  When ruling on a Rule 12(b)(2)

motion to dismiss, the court takes uncontroverted allegations in the plaintiffs'

complaint as true.  <u>Johnston v. Multidata Sys. Intern. Corp.</u>, 523 F.3d 602, 609 (5th

Cir. 2008).  When a defendant disputes the factual basis for personal jurisdiction,

the district court may consider evidence including "affidavits, interrogatories,

depositions, oral testimony, or any combination of the recognized methods of

discovery."  <u>Quick Techs., Inc. v. Sage Grp. PLC</u>, 313 F.3d 338, 344 (5th Cir.

2002).  Conflicts between facts contained in the parties' affidavits and other

documentation must be resolved in the plaintiffs' favor.  <u>Revell v. Lidov</u>, 317 F.3d

467, 469 (5th Cir. 2002).

<u>DISCUSSION</u>

I.     <u>GM's Motion to Dismiss for Failure to State a Claim</u>

GM argues that Plaintiffs have failed to plead sufficient factual

content to state a claim on each of their causes of action against GM.  GM further

argues that Plaintiffs have failed to plead their claim for misrepresentation with

sufficient particularity under Federal Rule of Civil Procedure 9(b).  The Court will

address each of Plaintiffs' claims against GM in turn.

5

A.    <u>Manufacturing Defect</u>

"A manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." <u>Cooper Tire & Rubber Co. v. Mendez</u>, 204 S.W.3d 797, 800 (Tex. 2006) (quoting <u>Ford Motor Co. v. Ridgway</u>, 135 S.W.3d 598, 600 (Tex. 2004)).  The product must have been defective when it left the manufacturer, and the defect must have been "a producing cause of the plaintiff's injuries." <u>Id.</u>

Plaintiffs' Second Amended Complaint alleges that during the crash in which Mendoza and her brother were killed, the GMC Envoy rolled "approximately one and a half times," and that both occupants "were possibly ejected." (Dkt. # 11 ¶ 25.)  Plaintiffs allege that the Envoy was "built in a defective manner, with lack of crashworthiness," rendering the vehicle "unreasonably dangerous," and that it "differed from the manufacturer's plans, specifications and intended manufacturing results." (<u>Id.</u> ¶¶ 27, 45.)  Plaintiffs allege that the defects "include, but are not limited to, defective rollover prevention, unreasonably high center of gravity, unreasonable instability, defects in braking and steering, unreasonably instable roof and roof crush propensity, defective restraint and supplemental restraint systems, including air bags and safety

belts, defective seats and seatbacks, defective doors and door latches, which allowed doors to open during the rollover . . . some of which were subject to GM recall."  (Id. ¶ 30.)  Plaintiffs allege that the vehicle's "dynamic stability system, handling and control systems, inadequate brakes and defective suspension system caused the vehicle to roll over instead of slide out to a safe stop under foreseeable driving conditions."  (Id. ¶ 48.)  Plaintiffs further allege that the defects existed from the time of manufacture, and that the defects "were the producing cause" of the collision and Barragan's death.  (Id. ¶¶ 29–30.)

GM characterizes Plaintiffs' allegations as "impermissibly conclusory and vague," arguing that Plaintiffs must state the "actual" manufacturing defect in the vehicle rather than merely list "potential defects."  (Dkt. # 15 at 8–9.) Plaintiffs' allegations, however, are neither conclusory nor vague, and the defects alleged are not pleaded as "potential" or "possible" defects but actual defects that allegedly caused the deaths of the decedents.  While GM argues that Plaintiffs "make no attempt to state what aspect of the vehicle differed from the manufacturer's plans and specifications," Plaintiffs in fact allege that the vehicle differed from the manufacturer's plans specifications and intended results in multiple ways, including the vehicle's "high center of gravity," "dynamic stability system," "instable roof and crush propensity," "defective restraint and supplemental restraint systems, including air bags and safety belts," and "defective

7

doors and door latches, which allowed doors to open during the rollover." (Dkt. # 11 ¶ 45, 48.) These allegations reflect the alleged nature of the accident, in which the vehicle is alleged to have rolled over and ejected both decedents. (Dkt. # 11 ¶ 25.)

GM appears to argue not that Plaintiffs have failed to allege sufficient facts to state a plausible claim for relief, but instead that they have alleged too many. Nothing in either Rule 8 or Rule 11 of the Federal Rules of Civil Procedure requires Plaintiffs to narrow their theory of liability to one defect, or some other smaller quantity of defects than alleged here, at this stage of the litigation.[2] Plaintiffs have set forth factual allegations regarding each element of their claim for manufacturing defect, and have identified specific defects alleged to have caused the crash. Plaintiffs have therefore stated a plausible claim for manufacturing defect.

The cases cited by GM are not to the contrary. In <u>Funk v. Stryker Corp.</u>, the Fifth Circuit considered a plaintiff's claim that the manufacturer of a hip prosthesis had failed to conform to Food and Drug Administration regulations

---

[2] While GM suggests that Plaintiffs cannot have satisfied their Rule 11 obligations to investigate the facts in support of their claims given that they have not yet inspected the vehicle, the standard for investigation under Rule 11 is "an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b). GM has not separately moved for sanctions as required under Rule 11(c)(2), and the circumstances of the inquiry made by Plaintiffs' counsel are thus not before the Court.

governing the manufacturing of certain medical devices.  631 F.3d 777, 782 (5th

Cir. 2011).  Because the claim involved a certain type of medical device, it was

subject to preemption by the Federal Food, Drug, and Cosmetic Act ("FFDCA"),

which permitted only those state law claims based on federal regulations.  Id. at

779; 21 U.S.C. § 360k.  The Fifth Circuit found that the plaintiff failed to state a

claim because the pleading failed to state "how the manufacturing process failed,

or how it deviated from the FDA approved manufacturing process."  Funk, 631

F.3d at 782.  The court further found that the complaint failed to "specify a causal

connection between the failure of the specific manufacturing process [relative to

FDA manufacturing requirements] and the specific defect in the process that

caused the personal injury."  Id. at 782.  These considerations are applicable only

in the context of a claim based on violations of regulations under the FFDCA, and

cannot be used here to argue that Plaintiffs' allegations are insufficiently specific.

        To the extent the opinion can be applied outside of the context of the

FFDCA, Plaintiffs' allegations here are consistent with its holding.  The complaint

in Funk did not "specify the manufacturing defect" or the "causal connection"

between the defect and the injury, id.; Plaintiffs here have identified several

alleged manufacturing defects and maintain that they caused the vehicle to roll

over and eject the occupants, leading to their deaths, (Dkt. # 11 ¶¶ 25, 30, 45–50).

Further, the complaint in Funk invoked the doctrine of res ipsa loquitur to

overcome its lack of specificity; Plaintiffs' claim for manufacturing defect does not

invoke or otherwise rely on that doctrine.

      None of the cases cited by GM support the proposition that a

complaint alleging multiple manufacturing defects is impermissibly vague or

otherwise fails to satisfy the pleading standards of <u>Iqbal</u> and <u>Twombly</u>.[3]  Plaintiffs

have pled sufficient factual allegations, which the Court must accept as true on a

motion to dismiss under Rule 12(b)(6), to state a plausible claim for manufacturing

defect, and GM is not entitled to dismissal of this claim.  The Court therefore

**DENIES** GM's Motion to Dismiss for Failure to State a Claim on Plaintiffs' claim

for manufacturing defect.

    B.   <u>Design Defect</u>

      To succeed on a design defect claim, a plaintiff must show that

"(1) the product was defectively designed so as to render it unreasonably

---

[3] In <u>Eckhardt v. Qualitest Pharmaceuticals Inc.</u>, the district court dismissed a claim
for manufacturing defect upon a finding that the complaint "contains no more than
conclusory allegations."  858 F. Supp. 2d 792, 800 (S.D. Tex. 2012), <u>aff'd</u>, 751
F.3d 674 (5th Cir. 2014).  The court's order contained no further description of the
complaint's allegations, and so can stand only for the proposition that conclusory
allegations are insufficient to state a claim for relief.
    In <u>Green v. R.J. Reynolds Tobacco Co.</u>, the Fifth Circuit affirmed a district
court's dismissal of a complaint for manufacturing defect in cigarettes that alleged
only that cigarettes contained "impurities, including pesticide residue."  274 F.3d
263, 269 (5th Cir. 2001).  Because the complaint did not allege that the defendants'
cigarettes deviated from their design specifications, the allegations were design
defect claims preempted by Texas statute.  <u>Id.</u>  Plaintiffs here alleged that the
specified defects in the GMC Envoy deviated from GM's design specifications.
(Dkt. # 11 ¶¶ 45, 49.)

dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which plaintiff seeks recovery." <u>Timpte Indus., Inc. v. Gish</u>, 286 S.W.3d 306, 311 (Tex. 2009); Tex. Civ. Prac. & Rem. Code § 85.002(a).  A "safer alternative design" is defined as:

> a product design other than the one actually used that in reasonable probability (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death with substantially impairing the product's utility; and (2) was economically and technology feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

Tex. Civ. Prac. & Rem. Code § 85.005(b).

GM argues that that Plaintiffs have failed to plead the existence of a safer alternative design.  (Dkt. # 15 at 10.)  Plaintiffs acknowledge that they did not plead "an alternative design in the usual manner," but argue that the existence of a safer alternative design can be "reasonably ascertained" from the facts pled.  (Dkt. # 43 at 14.)  Specifically, they argue that they have alleged several defects, including a lack of stability, ineffective brakes and steering, and inadequate roof and crush propensity, and it may be inferred that safer alternative designs would have been, for example, "reasonable stability," "working brakes and steering," and "stable roof and crush propensity."  (<u>Id.</u>)

To defeat a 12(b)(6) challenge, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain

allegations from which an inference fairly may be drawn that evidence on these material points will be produced at trial." Rios v. City of Del Rio, Tex., 444 F.3d 417, 420–21 (5th Cir. 2006).  Allegations that certain features of a product's design caused injury do not, alone, create an inference that safer alternative designs exist for each or any of the allegedly defective features.  For example, accepting as true the allegation that a particular design feature was a producing cause of injury, it remains possible that that an alternative design could not have reduced the risk of harm without substantially impairing the product's utility, or that there was no alternative design that was economically or technologically feasible.  Absent factual allegations that such an alternative design in fact existed, Plaintiffs have not pled sufficient factual matter to allow the Court to draw a reasonable inference that GM is liable for defective design.  Plaintiffs have therefore failed to state a claim for design defect.  Accordingly, the Court **GRANTS** GM's Motion to Dismiss with respect to Plaintiffs' claim for design defect, which is **DISMISSED WITHOUT PREJUDICE**.

C.   Marketing Defect

"Generally, a manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product." Am. Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 426 (Tex. 1997).  "A product may be unreasonably dangerous if a manufacturer fails to warn of a foreseeable risk

12

arising from the use of the product, and the lack of adequate warnings or

instructions renders an otherwise adequate product unreasonably dangerous."

McLennan v. Am. Eurocopter Corp., Inc., 245 F.3d 403, 427 (5th Cir. 2001)

(quoting Coleman v. Cintas Sales Corp., 40 S.W.3d 544, 549–50 (Tex. App.

2001)).  To prevail on a claim for marketing defect, a plaintiff must prove that

> (1) a risk of harm is inherent in the product or may arise from the
> intended or reasonably anticipated use of the product, (2) the product
> supplier actually knew or should have reasonably foreseen the risk of
> harm at the time the product was marketed, (3) the product possessed
> a marketing defect, (4) the absence of the warning or instructions
> rendered the product unreasonably dangerous to the ultimate user of
> the product, and (5) the failure to warn or instruct constituted a
> causative nexus in the product user's injury.

DeGrate v. Executive Imprints, Inc., 261 S.W.3d 402, 411 (Tex. App. 2008).

GM argues that Plaintiffs have failed to state a claim for marketing

defect because they allege that GM failed to warn users of product defects, not that

GM failed to warn users of a risk inherent in or arising from foreseeable use of its

"otherwise adequate product."  GM is correct that the warnings it allegedly failed

to give are warnings regarding the manufacturing and design defects alleged by

Plaintiffs.  In relevant part, the Second Amended Complaint alleges:

> At the time Defendant GM manufactured, sold and/or distributed the
> GMC envoy, they failed to give adequate warning of the dangers, or
> adequate instruction for safe use . . . . GM failed to warn about the
> vehicles [sic] defects which include, but are not limited to, defective
> rollover prevention, unreasonably high center of gravity, unreasonable
> instability, defects in braking and steering, unreasonably instable roof
> and roof crush propensity, defect restraint and supplemental restraint

13

systems, including air bags and safety belts, defective seats and seatbacks, defective doors and door latches, which allowed doors to open during the rollover . . . .

GM did not warn against the GMC Envoy's propensity to roll over in a low speed accident or of the door, door-latch, and door latch system to open during an accident, or its roof systems to crush and/or open during an accident.

(Dkt. # 11 ¶¶ 52, 54.)

"A marketing defect claim and a design defect claim are clearly distinct and separable.  A marketing defect is found if the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous.  A design defect focuses on a defect in the product itself, and whether safer designs for the product were available."  Benavides v. Cushman, Inc., 189 S.W.3d 875, 881 (Tex. App. 2006).  Plaintiffs do not allege that the lack of adequate warning rendered the otherwise adequate GMC Envoy unreasonably dangerous, but rather that GMC failed to warn of the danger created by the alleged manufacturing and design defects.  The aim of a marketing defect claim is to impose liability where the failure to warn itself caused a product to be unreasonably dangerous.  See Ethicon Endo-Surgery, Inc. v. Meyer, 249 S.W.3d 513 (Tex. App. 2007).  Plaintiffs here have alleged only that GM failed to warn of unreasonable danger created by the vehicle's alleged manufacturing and design defects, and they have therefore failed to state a claim for marketing defect.  See Timoschuk v. Daimler Trucks N. Am., LLC, No. SA-12-CV-816-XR, 2014 WL

14

2592254, at *3 (W.D. Tex. June 10, 2014) (holding that a claim for marketing

defect failed where plaintiffs only alleged that the defendant had failed to warn of a

vehicle's defective design); Oldham v. Thompson/Ctr. Arms Co., Inc., No.

H-12-2432, 2013 WL 1576340, at *4 (S.D. Tex. Apr. 11, 2013) ("The Court is

aware of no case law, and Plaintiff has cited none, indicating that a defendant can

be held strictly liable for failing to warn of the existence of a manufacturing

defect."). The Court therefore **GRANTS** GM's Motion to Dismiss with respect to

Plaintiffs' claim for marketing defect, which is **DISMISSED WITHOUT**

**PREJUDICE**.

     D.    <u>Negligence</u>

     GM also argues that Plaintiffs have failed to state a claim for

negligence because Plaintiffs have not adequately pled that the Envoy was

defective. (Dkt. # 15 at 11.) Plaintiffs' negligence claim alleges that GM

negligently failed to design and manufacture the vehicle "free of defects."[4] (Dkt.

# 11 ¶ 65.)

     A product liability action based in negligence "looks at the acts of the

manufacturer and determines if it exercised ordinary care in design and

---

[4] Plaintiffs' Complaint also alleges that GM negligently failed to give adequate
warnings and instructions regarding the use of the GMC Envoy. (Dkt. # 11 ¶ 65.)
Because liability for marketing defect, like negligence liability, is imposed only for
a failure to exercise reasonable care, there is no separate claim for marketing defect
based on negligence. Wood v. Phillips Petroleum Co., 119 S.W.3d 870, 873 & n.6
(Tex. App. 2003).

production." <u>Caterpillar, Inc. v. Shears</u>, 911 S.W.2d 379, 384 (Tex. 1995). "To prevail on a claim of negligence against the supplier of an allegedly defective product, a plaintiff must prove a legal duty owed to the plaintiff by the defendant, breach of that duty, and damages to the plaintiff proximately caused by the breach of the duty." <u>Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.</u>, 229 S.W.3d 374, 385 (Tex. App. 2009).

As discussed above with respect to Plaintiffs' claim for manufacturing defect, Plaintiffs have adequately alleged that the GMC Envoy was defective. Plaintiffs allege, among other things, that the vehicle had an unreasonably high center of gravity, instable roof and roof crush propensity, and defective doors and door latches that allowed the doors to open during the accident. (Dkt. #11 ¶ 65.) These allegations contain sufficient facts to plausibly plead that the vehicle was defective, and Plaintiffs' negligence-based claims for manufacturing and design defect thus cannot be dismissed for failure to plead a defect. GM raised no other argument with regard to Plaintiffs' negligence-based claims, and the Court therefore **DENIES** GM's Motion to Dismiss with respect to those claims.

E.    <u>Breach of Warranty</u>

GM argues that Plaintiffs' claims for breach of warranty should be dismissed because they are precluded by the statute of limitations. (Dkt. # 15 at 13.) The limitations period for warranty claims in Texas is four years. Tex. Bus.

& Com. Code § 2.725(a), (b); <u>Grinnell</u>, 951 S.W.2d at 435.  "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."  Tex. Bus. & Com. Code § 2.275(b).  Unless a warranty explicitly extends to future performance of the goods, a breach of warranty occurs when tender of delivery is made.  <u>Id.</u>

       In connection with its motion to dismiss Plaintiffs' claim for breach of warranty, GM has requested that the Court take judicial notice of the Certificate of Title for the GMC Envoy involved in the accident on file with the North Carolina Division of Motor Vehicles.[5]  (Dkt. # 15 at 14.)  A court may consider judicially noticeable facts on a motion to dismiss for failure to state a claim.  <u>Wolcott v. Sebelius</u>, 635 F.3d 757, 763 (5th Cir. 2011).  A fact may be judicially noticed if it is not subject to reasonable dispute because it "is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  GM seeks to use the submitted title records to establish that the vehicle was originally sold in 2004 and that the four-year limitations period therefore expired in 2008, six years before Plaintiffs filed this suit.

---

[5] The documents submitted are copies of documents filed in the North Carolina Division of Motor Vehicles and certified as correct by the custodian of records, and are therefore self-authenticating under Federal Rule of Evidence 902(4)(A).

In the context of publicly recorded title documents, courts have generally limited judicial notice under Rule 201(b)(2) to the fact that such documents were filed in the public records, and have refused to notice the factual content contained in the documents.  See, e.g., Callan v. Deutsche Bank Trust Co. Americas, 11 F. Supp. 3d 761, 765 n.2 (S.D. Tex. 2014); Mendoza v. Wells Fargo Bank, N.A., No. H-14-0554, 2014 WL 2624938, at *3 (S.D. Tex. June 12, 2014). While some courts have been willing to judicially notice the contents of such documents, the Court finds that the better practice is to limit notice to the fact of filing.  Whereas the North Carolina Motor Vehicles Division's recordkeeping cannot reasonably be questioned, the contents of the title documents were not drafted or verified by the state agency, and therefore could reasonably be subject to dispute.  The Court will therefore not consider the documents' contents in the context of GM's 12(b)(6) motion.

Plaintiffs' warranty allegations are made under the heading "breach of implied warranty of merchantability," but Plaintiffs appear to allege theories of both implied and express warranty.  The Court will therefore discuss each.

### 1.   Implied Warranty of Merchantability

To establish a breach of the implied warranty of merchantability, a plaintiff must show that the product contained a defect that renders it unfit for its ordinary purpose, the defect existed when it left the manufacturer's possession, and

that the defect caused the plaintiff to suffer injury.  Gen. Motors Corp. v. Garza,

179 S.W.3d 76, 81 (Tex. App. 2005); Roventini v. Ocular Sciences, Inc., 111

S.W.3d 719, 723 (Tex. App. 2003); Tex. Bus. & Com. Code § 2.314.

Non-purchasing parties affected by the product, such as the family of the ultimate

purchaser, may sue under breach of implied warranty for personal injury.  Garcia

v. Tex. Instruments, Inc., 610 S.W.2d 456, 465 (Tex. 1980).

     Plaintiffs allege that "Defendant General Motors Dealership X[6] . . .

impliedly warranted to the public generally, that the GMC Envoy was of

merchantable quality and was safe and fit for the purpose intended when used

under ordinary conditions and in an ordinary manner. Plaintiff relied upon

these . . . implied warranties and suffered the injuries and damages set forth below

as a proximate result of the breach of these warranties."  (Dkt. # 11 ¶ 73.)

Plaintiffs further allege that "GM breached these warranties by designing,

manufacturing, distributing, selling the subject 2004 Envoy which contained

numerous defects," and go on to list several alleged defects.  (Id.)  Finally,

Plaintiffs allege that the Envoy was unsafe for its intended purposes at the time it

left GM's control.  (Id. ¶ 29.)  These allegations contain sufficient factual material

to plead a plausible claim for breach of the implied warranty of merchantability

---

[6] It is unclear from Plaintiffs' pleading whether these claims are alleged against
GM or the unspecified General Motors dealership.  GM, "out of an abundance of
caution," addressed the claims in their Motion, and the Court will consider them to
have been alleged against GM as well.

against GM, and the Court therefore **DENIES** GM's Motion to Dismiss with respect to this claim.

        2.      <u>Express Warranty</u>

      "An express warranty is created when a seller makes an affirmation of fact or a promise to the buyer which relates the products or goods sold and warrants a conformity to the affirmation or promise." <u>Lujan v. Tampo Mfg. Co., Inc.</u>, 825 S.W.2d 505, 511 (Tex. App. 1992). To establish a breach of express warranty, a buyer must show

> 1) an affirmation or promise made by the seller to the buyer; 2) that such affirmation or promise was part of the basis for the bargain, e.g., that the buyer relied on such affirmation or promise in making the purchase; 3) that the goods failed to comply with the affirmation or promise; 4) that there was financial injury; and 5) that the failure to comply was the proximate cause of the financial injury to the buyer.

<u>Lindemann v. Eli Lilly & Co.</u>, 816 F.2d 199, 202 (5th Cir. 1987); <u>see also</u> Tex. Bus. & Com. Code § 2.313. To recover for breach of express warranty, the plaintiff must be in privity with the manufacturer or seller of the product. <u>Keith v. Stoelting, Inc.</u>, 915 F.2d 996, 999 (5th Cir. 1990); <u>Lujan</u>, 825 S.W.2d at 511.

      Plaintiffs allege that "Defendant General Motors Dealership X expressly . . . warranted to the public generally, that the GMC Envoy was of merchantable quality and was safe and fit for the purpose intended when used under ordinary conditions and in an ordinary manner. Plaintiff relied upon these express . . . warranties and suffered the injuries and damages set forth below as a

proximate result of the breach of these warranties." (Dkt. # 11 ¶ 73.) Plaintiffs have included no other allegations regarding any express warranty made by GM. Because an express warranty requires an affirmation or promise from the seller to the buyer, Plaintiffs' allegation that GM made any warranty "to the public generally" is therefore insufficient. Additionally, Plaintiffs do not allege that they purchased the vehicle involved in the accident from GM, and thus have not alleged the privity relationship necessary to state a claim against a seller for breach of express warranty. Accordingly, the Court **GRANTS** GM's Motion to Dismiss with respect to Plaintiffs' claim for breach of express warranty, which is **DISMISSED WITHOUT PREJUDICE**.

### F.   Gross Negligence and Misrepresentation

At the hearing, the parties represented that they had reached an agreement regarding Plaintiffs' claims against GM for gross negligence and misrepresentation. Plaintiffs have agreed to dismiss these claims based on GM's 2009 bankruptcy discharge, and the Court therefore **DENIES AS MOOT** GM's Motion to Dismiss with respect to these claims.

### II.   U-Haul's Motion to Dismiss for Failure to State a Claim

U-Haul's original Motion to Dismiss sought dismissal for lack of personal jurisdiction and for failure to state a claim. U-Haul has withdrawn its arguments based on personal jurisdiction (Dkt. # 33), and argues only that

Plaintiffs have failed to state a claim against it.  The Court will address U-Haul's

arguments with respect to each of Plaintiffs' claims against it in turn.

> A.   <u>Manufacturing Defect</u>

U-Haul first argues that Plaintiffs have failed to state a claim for

manufacturing defect because they have not alleged how the trailer deviated from

U-Haul's plans or specifications or that any such defect caused the accident at

issue in this case.  (Dkt. # 18 at 14.)  As noted above, "[a] manufacturing defect

exists when a product deviates, in its construction or quality, from the

specifications or planned output in a manner that renders it unreasonably

dangerous."  <u>Mendez</u>, 204 S.W.3d at 800.  The product must have been defective

when it left the manufacturer, and the defect must have been "a producing cause of

the plaintiff's injuries."  <u>Id.</u>

Plaintiffs' claim for manufacturing defect against U-Haul, however,

appears to be based not on a theory of strict liability, but on U-Haul's alleged

negligence.  Plaintiffs allege that the injuries suffered by the decedent "were a

direct and proximate result of negligence attributable to Defendant U-Haul."  (Dkt.

# 11 ¶ 79.)  Plaintiffs further allege that U-Haul "fail[ed] to use due care in the

manufacture of the U-Haul Cargo Trailer" and "fail[ed] to use proper materials

reasonably suited to the design . . . of the U-Haul Cargo Trailer or the component

parts thereof."  (<u>Id.</u>)  Plaintiffs allege that the resulting defects included "the

improper weight distribution of the trailer, the lack of stability of the trailer, the tendency to fishtail or sway during normal operations of slowing or braking, [and] the tendency to 'tippy toe' during normal operations and cause difficulty in the operation of the tow vehicle including rollover accidents." (Id.)  Plaintiffs finally allege that "U-Haul allowed the subject trailer to be defectively . . . manufactured . . . and was lethal to its ultimate user Isabel Barragan Mendoza in that the subject U-Haul trailer fishtailed, tippy toed and caused a slide and roll of the combination vehicle of the Envoy and the U-Haul Tandem Trailer." (Id.)

       A product liability action based in negligence "looks at the acts of the manufacturer and determines if it exercised ordinary care in design and production." Shears, 911 S.W.2d at 384.  "To prevail on a claim of negligence against the supplier of an allegedly defective product, a plaintiff must prove a legal duty owed to the plaintiff by the defendant, breach of that duty, and damages to the plaintiff proximately caused by the breach of the duty." Dewayne Rogers Logging, 229 S.W.3d at 385.

       Plaintiffs' have sufficiently pled a claim against U-Haul for manufacturing defect based on negligence.  While Plaintiffs did not specifically plead that U-Haul owed a duty to Mendoza, they have alleged sufficient facts to allow the Court to reasonably infer such a duty.  Specifically, Plaintiffs allege that Mendoza rented a U-Haul Cargo Tandem Trailer, manufactured by U-Haul, from

an affiliated U-Haul rental center, and was towing the trailer on the interstate with her GMC Envoy at the time of the accident.  (Dkt. # 11 ¶¶ 24–25, 75, 88.)  From these facts, the Court can reasonably infer that Mendoza was a foreseeable consumer using the trailer in a foreseeable manner, and that U-Haul therefore owed a duty to Mendoza to manufacture the trailer so as to avoid foreseeable risk of injury.  See Tex. Home Mgmt., Inc. v. Peavy, 89 S.W.3d 30, 34 (Tex. 2002) (considering the relationship between the parties, the reasonable foreseeability of harm to the person injured, and public policy considerations in determining the existence of a legal duty); see also DeGrate v. Exec. Imprints, Inc., 261 S.W.3d 402, 409 (Tex. App. 2008) ("Every person has a duty to exercise reasonable care to avoid a foreseeable risk of injury to others.").

Plaintiffs allege that U-Haul breached its duty by failing to use materials properly suited to the design of its Cargo Trailer and its component parts, resulting in improper weight distribution and a lack of stability that tended to cause the trailer to fishtail, sway, or "tippy toe" during normal use.[7]  (Dkt. # 11 ¶ 79.) Plaintiffs further allege that these defects proximately caused Mendoza to lose control of her vehicle and crash, resulting in her death.  (Id.)  These factual

---

[7] The Court notes that Plaintiffs also allege defects in the form of "defective loading instructions, including the kind, amount and total of the cargo, [and] the towing vehicles allowed."  (Dkt. # 11 ¶ 79.)  Such defects are not defects in design or manufacture, but in the warnings given (i.e., a marketing defect), and thus cannot support Plaintiffs' claims for either manufacturing or design defect.

allegations are sufficient to plausibly allege that U-Haul breached its duty of care to Mendoza in its manufacture of the trailer involved in the accident,[8] and that U-Haul's breach was the proximate cause of her death.  Plaintiffs have therefore stated a plausible claim against U-Haul for manufacturing defect based on negligence, and the Court **DENIES** U-Haul's Motion to Dismiss as to this claim.

> B.    Design Defect

U-Haul argues that Plaintiffs' claim for design defect should be dismissed because the only defects alleged relate to marketing defects and because Plaintiffs have failed to allege the existence of a safer alternative design.  (Dkt. # 18 at 6–7.)  U-Haul is incorrect to characterize Plaintiffs' allegations as limited only to defects in the warnings provided; as noted above, Plaintiffs also allege that the trailer's design defects included improper weight distribution and a lack of stability.  (Dkt. # 11 ¶ 77.)  U-Haul is correct, however, that Plaintiffs' Second Amended Complaint does not allege that a safer design alternative exists.  As discussed above in relation to Plaintiffs' design defect claim against GM, the failure to plead the existence of a safer design alternative is fatal to a strict liability

---

[8] U-Haul argues that Plaintiffs' claim must fail because they have failed to plead that the trailer was defective.  While U-Haul is correct that both strict liability and negligence theories of a claim manufacturing defect require the Plaintiff to show that the product was defective, see, e.g., Ford Motor Co. v. Miles, 141 S.W.3d 309, 315 (Tex. App. 2004), Plaintiffs here have alleged defects factually related to the alleged nature of the accident: the trailer's improper weight distribution and lack of stability, (Dkt. # 11 ¶ 79).

claim for design defect.  See <u>Gish</u>, 286 S.W.3d at 311; <u>Rios</u>, 444 F.3d at 420–21.

Accordingly, to the extent Plaintiffs sought to plead a strict liability claim for

design defect, the Court **DISMISSES** that claim.

      Plaintiffs also allege, however, that U-Haul's design of the trailer was

negligent.  Specifically, in allegations mirroring those for their negligence-based

claim for manufacturing defect, Plaintiffs allege that Mendoza's death was the

"proximate result of negligence attributable to Defendant U-Haul," which "fail[ed]

to use due care in the design of the U-Haul Cargo Trailer."  (Dkt. # 11 ¶ 79.)

Plaintiffs also allege that "U-Haul allowed the subject trailer to be defectively

designed" and that the design "fail[ed] to use proper materials reasonably suited to

the manufacture . . . of the U-Haul Cargo Trailer or the component parts thereof."

(<u>Id.</u>)  Plaintiffs allege that the design resulted in "improper weight distribution" and

a "lack of stability" in the trailer, which tended to cause the trailer to fishtail, sway,

and "tippy toe" during normal use.  (<u>Id.</u>)  Plaintiffs finally allege that these design

defects caused Mendoza to lose control of her vehicle and crash, resulting in her

death.  (<u>Id.</u>)

      For the same reasons discussed with regard to Plaintiffs'

negligence-based claim for manufacturing defect, Plaintiffs have sufficiently pled a

claim for design defect based in negligence.  Plaintiffs have pled sufficient facts to

allow the Court to infer that U-Haul owed a duty of care to Mendoza, and

Plaintiffs' factual allegations are also sufficient to plausibly allege that U-Haul breached its duty by designing its trailer such that it had an improper weight distribution and lacked stability, causing it to fishtail and "tippy toe" during normal use, and that these design defects proximately caused Mendoza's death. Plaintiffs have therefore stated a valid claim for negligence in the design of the trailer, and the Court **DENIES** U-Haul's Motion to Dismiss as to this claim.[9]

C.   Gross Negligence

U-Haul argues that Plaintiffs' claim for gross negligence should be dismissed because they have pled no factual allegations to support their claim. (Dkt. # 18 ¶ 19.)  Plaintiffs' allegations of gross negligence against U-Haul are identical to their allegations of gross negligence against GM, and thus suffer from the same defects.  Plaintiffs formulaically recite the elements of a claim for gross negligence without any factual allegations beyond a general reference to U-Haul's "acts or omissions described above."  (Dkt. #11 ¶ 108.)

---

[9] The Court notes that Plaintiffs also refer to the doctrine of res ipsa loquitur in their negligent design allegations.  Res ipsa loquitur applies only where "(1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant."  Haddock v. Arnspiger, 793 S.W.2d 948, 950 (Tex. 1990).  This doctrine is inapplicable to Plaintiffs' claims against U-Haul given that defects in the GMC Envoy, or Mendoza's own negligence, could also have caused the accident.  Plaintiffs have nevertheless, for the reasons stated above, sufficiently alleged a claim for negligent design.

As noted above, gross negligence requires that "(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others." Great Plains Trust Co., 313 F.3d at 314. The only allegation with regard to U-Haul's awareness is that "U-Haul knew, or in the exercise of ordinary care, should have known" that Plaintiffs' injuries "were a direct and proximate result of negligence attributable to Defendant U-Haul." (Dkt. # 11 ¶ 79.) The Second Amended Complaint contains no factual allegations that U-Haul was aware of the risk involved in its alleged negligence in designing and manufacturing the trailer and nevertheless proceeded with conscious indifference to the safety of others. Plaintiffs' claim for gross negligence therefore lacks sufficient factual allegations to state a plausible claim for relief. Accordingly, the Court **GRANTS** U-Haul's Motion to Dismiss with respect to Plaintiffs' claim for gross negligence, which is **DISMISSED WITHOUT PREJUDICE**.

D.    Breach of Warranty

Finally, U-Haul argues that Plaintiffs' claims for breach of express and implied warranties should be dismissed because Plaintiffs have failed to allege sufficient facts to support a plausible claim for relief. (Dkt. # 18 at 20.) Plaintiffs

respond that they have alleged facts "[i]n various places throughout the 29 page [Second Amended Complaint]" indicating that U-Haul "warranted it would be safe to attach this trailer to the 2004 GMC Envoy and load it up and travel with it through Texas on her way home to Arizona."  (Dkt. # 44 at 15.)  The Court will consider Plaintiffs' claims of implied warranty and express warranty separately.

### 1.   Implied Warranty of Merchantability

To establish a breach of the implied warranty of merchantability, a plaintiff must show that the product contained a defect that renders it unfit for its ordinary purpose, that the defect existed when it left the manufacturer's possession, and that the defect caused the plaintiff to suffer injury.  Garza, 179 S.W.3d at 81; Roventini, 111 S.W.3d at 723; Tex. Bus. & Com. Code § 2.314.

Plaintiffs allege that "Defendant U-HAUL . . . impliedly warranted to the public generally, that the U-HAUL Cargo Trailer was of merchantable quality and was safe and fit for the purpose intended when used under ordinary conditions and in an ordinary manner. Plaintiff . . . suffered the injuries and damages set forth below as a proximate result of the breach of these warranties."  (Dkt. # 11 ¶ 80.) Plaintiffs also allege that "the U-Haul Cargo Trailer was defective and unsafe for its intended purpose at the time it left the control of Defendant U-Haul and at the time it was sold in that it failed in its design to prevent rollovers," and that the defects included "improper weight distribution" and "lack of stability" tending to

make the trailer fishtail or "tippy toe" during normal operations.  (<u>Id.</u> ¶ 77.)  These allegations contain sufficient factual material to plead a plausible claim for breach of the implied warranty of merchantability against U-Haul, and the Court therefore **DENIES** U-Haul's Motion to Dismiss with respect to this claim.

              2.   <u>Express Warranty</u>

As noted above, "[a]n express warranty is created when a seller makes an affirmation of fact or a promise to the buyer which relates the products or goods sold and warrants a conformity to the affirmation or promise."  <u>Luja.</u>, 825 S.W.2d at 511.  To establish a breach of express warranty, a buyer must show

> 1) an affirmation or promise made by the seller to the buyer; 2) that such affirmation or promise was part of the basis for the bargain, e.g., that the buyer relied on such affirmation or promise in making the purchase; 3) that the goods failed to comply with the affirmation or promise; 4) that there was financial injury; and 5) that the failure to comply was the proximate cause of the financial injury to the buyer.

<u>Lindemann</u>, 816 F.2d at 202 (5th Cir. 1987); <u>see also</u> Tex. Bus. & Com. Code § 2.313.  To recover for breach of express warranty, the plaintiff must be in privity with the manufacturer or seller of the product.  <u>Keith</u>, 915 F.2d at 999; <u>Lujan</u>, 825 S.W. 2d at 511.

Plaintiffs allege that "Defendant U-HAUL expressly . . . warranted to the public generally, that the U-HAUL Cargo Trailer was of merchantable quality and was safe and fit for the purpose intended when used under ordinary conditions and in an ordinary manner.  Plaintiff relied upon these express . . . warranties and

suffered the injuries and damages set forth below as a proximate result of the breach of these warranties." (Dkt. # 11 ¶ 80.) Plaintiffs have included no other allegations regarding any express warranty made by U-Haul. As noted above, an express warranty requires an affirmation or promise from the seller to the buyer; Plaintiffs' allegation that U-Haul made any warranty "to the public generally" is therefore insufficient. Additionally, Plaintiffs do not allege that they rented or bought the trailer involved in the accident from U-Haul. They instead allege that Mendoza rented the trailer from an unnamed U-Haul rental center. (Id. ¶ 88.) Any express warranty thus would have necessarily been made to Mendoza. Mendoza's estate is not a party to this suit, and there is no allegation that Plaintiffs were somehow in direct privity with Mendoza. Plaintiffs are therefore unable to state a claim for breach of express warranty against U-Haul. Accordingly, the Court **GRANTS** U-Haul's Motion to Dismiss with respect to Plaintiffs' claim for breach of express warranty, which is **DISMISSED WITH PREJUDICE**.

III.    AMERCO's Motion to Dismiss for Lack of Personal Jurisdiction

          At the hearing, the parties represented that they had reached an agreement in which Plaintiffs agreed to dismiss its claims against AMERCO. The Court therefore **DENIES AS MOOT** AMERCO's Motion to Dismiss for Lack of Personal Jurisdiction.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** GM's Motion to Dismiss for Failure to State a Claim (Dkt. # 15), **GRANTS IN PART AND DENIES IN PART** U-Haul's Motion to Dismiss for Failure to State a Claim (Dkt. # 18), and **DENIES AS MOOT** AMERCO's Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim (Dkt. # 17).  As stated in the hearing, Plaintiffs have leave to file a Third Amended Complaint within 90 days of the entry of this Order.

**IT IS SO ORDERED.**

**DATED:** Pecos, Texas, September 30, 2015.

_____
David Alan Ezra
Senior United States District Judge

32